UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CONNIE ALLEN,

    Plaintiff,

vs.

ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada corporation,

    Defendant.

No. CV-04-0017-JLQ

MEMORANDUM OPINION AND ORDER **GRANTING** DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  BEFORE THE COURT is Defendant's Motion for Summary Judgment (Ct. Rec. 42). A telephonic hearing was held on May 10, 2005. Plaintiff is represented by **Richard B. Price**. Defendant is represented by **Richard R. Olsen** and **Paul Burns**.

  Plaintiff contends that three mailings she received from Defendant constituted libel and that Defendant, through its employees, negligently or intentionally inflicted emotional distress upon her. While the mailings to the Plaintiff were offensive to all, including the court, whether they were legally actionable is the issue before the court, giving the Plaintiff the benefit of all reasonable inferences. Defendant contends that the words used on the label were not actionable libel and that Defendant's actions were not "extreme and outrageous" under Washington law nor did Plaintiff suffer severe emotional distress. The Plaintiff contends to the contrary.

### FACTUAL BACKGROUND

  As this is Defendant's motion, the evidence and inferences arising therefrom are viewed in the light most favorable to the Plaintiff. The following facts are undisputed.

  Plaintiff, Connie Allen, resides in the state of Washington and watched a television advertisement from Defendant, Echostar, or more specifically from DISH Network, which Plaintiff alleges is an interrelated business unit. The advertisement invited Plaintiff to call a toll-free number to inquire further about the program. In March, 2003,

ORDER - 1

1  Plaintiff did call, and a short time thereafter received a mailing from Defendant addressed
2  as follows:

3      Connie Allen
       Stupid Bitch!!!
4      110 Robinson Canyon Rd #C
       Omak WA 98841-9608
5

6  Plaintiff immediately called Defendant to express her dismay and humiliation. She was
7  told to return the mailing to Defendant, and she did so.  Plaintiff subsequently received
8  two more mailings, received at one week intervals, addressed in the same manner as
9  above, apparently because the offending employee had placed such an address in the
10 computer mailing database.  The Defendant did not learn of the second and third mailings
11 until it received a $1,000,000 demand letter from Plaintiff's attorney (Ex. C to Def's.
12 Statement of Facts), several months after the termination of the offending employee.

13      Plaintiff alleges that upon receipt of the first mailing in early March, 2003, she was
14 "stunned" and "embarrassed". (Connie Allen depo. p. 131-132).  The same day she
15 received the first mailing she called a DISH network number and spoke with a
16 "gentleman in Georgia". (Id. at 142).  He expressed shock at the mailing saying "oh, my
17 God". (Id. at 284).  He was very nice, appalled, and apologized for the situation. (Id. at
18 135).  She was then put in contact with Denise Lebeouf who was "real calm" (Id. at 134)
19 and "indifferent" (Id. at 251) and asked Plaintiff to fax the mailing.  Plaintiff said she
20 would not fax it but would send it back through the mail and told Ms. Lebeouf that the
21 customer service representative she had spoken to on her initial inquiry was named Jay.
22 (Id. at 134).

23      Plaintiff subsequently received the second mailing, addressed the same as the first,
24 about one week later.  She felt "outraged", "humiliated", and "humbled". (Id. at 155).
25 When Plaintiff received the third mailing a week later, she felt "a little bit of
26 nervousness" and she didn't sleep well for awhile. (Id. at 165).  She took precautions to
27 insure that the house was locked every night and described the situation as "alarming,
28 scary". (Id. at 281).  Plaintiff never sought any medical treatment for the emotional

distress allegedly caused by receiving the mailings. (Id. at 173).

Plaintiff learned from a postal employee that employees of the post office had noticed the mailing label and were discussing it among themselves. (Tyce Cutler depo. p. 61-62). The employees also informed the Postmaster, Kirby Michael, of the mailings. (Kirby Michael depo. p. 13).

Ms. Leboeuf, the Echostar employee Plaintiff contacted upon receiving the first mailing, began an investigation of the situation and notified "appropriate personnel". (Aff. ¶ 4). Defendant discovered that Javier Villa, a customer service representative at a call center in Texas, had entered Plaintiff's address and the term "stupid bitch" into the database. (Espinoza Aff. ¶ 4). Defendant found this to be inappropriate and promptly terminated Mr. Villa on March 24, 2003. (Id. at ¶ 5).

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

ORDER - 3

DISCUSSION

**I. Negligent Infliction of Emotional Distress**

It is well established that a federal court exercising diversity jurisdiction must apply substantive state law. *Allstate Insurance Co. v. Hughes,* 358 F.3d 1089 (9th Cir. 2004). Therefore this court looks to Washington law for the elements of the asserted tort. The tort of negligent infliction of emotional distress requires the plaintiff to prove she "has suffered emotional distress by objective symptomatology and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Kloepfel v. Bokor*, 149 Wash.2d 192, 197 (2003)(citing *Hegel v. McMahon*, 136 Wash.2d 122, 135 (1998)). Plaintiff concedes that her failure to seek medical treatment necessarily prohibits the establishment of a necessary element of negligent infliction of emotional distress. (See Ct. Rec. 59- Pltf's memo in opp. to SJ, p. 20). Accordingly, the court **GRANTS** Defendant's motion for summary judgment as to this claim.

**II. Libel**

Defendant argues that Plaintiff's complaint should be dismissed for failure to state a claim because the phrase "stupid bitch" is not actionable as a defamatory statement under Washington law. Defendant contends the statement is not provably false nor does it imply any undisclosed defamatory facts. Plaintiff argues in response that the medium, the audience, and the inference of undisclosed facts removes Defendant's conduct from being classified as non-actionable opinion.

The issue is whether the statement is one of fact or non-actionable opinion. An opinion cannot be defamatory because an opinion cannot be proven false. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Plaintiff's claim for libel must be based upon a provable statement, to which Plaintiff bears the burden of proving falsity. *Woods v. Battle Ground School Dist.*, 107 Wash.App. 550, 571 (2001); *Alpine Indust. Computers Inc. v. Cowles Publishing*, 114 Wash.App. 371, 379 (2002)("At the outset, the defamation plaintiff must prove the offensive statement is provably false."). In order to determine if a question is one of fact or opinion, the court will consider: 1) the medium and context in

which the statement was published; 2) the audience to whom it was published; and 3) whether the statement implied undisclosed facts. *Dunlap v. Wayne*, 105 Wash.2d 529 (1986). An opinion is actionable only if it implies that undisclosed defamatory facts support it. *Id.*

Under Washington law, the question of "[w]hether the allegedly defamatory words were intended as a statement of fact or an expression of opinion is a threshold question of law for the court." *Robel v. Roundup Corp.,* 148 Wash. 2d 35, 55 (Wash. 2002). In *Robel*, the Washington Supreme Court found that words directed to the Plaintiff such as "bitch", "cunt", and "fucking bitch" were vulgar names not understood to be meant literally but rather intended for vituperation and abuse and were therefore non-actionable opinion. *Id.* The Washington Supreme Court also found that the words "snitch", "liar", "squealer", and "idiot" posed a more difficult question, but that in the context of the case, where the statements were to another, none of the words carried defamatory meaning. *Id.* The court stated: "The vulgarisms, along with the word "idiot", were plainly abusive words not intended to be taken literally as statements of fact." *Id.* The court employed the *Dunlap* factors and concluded **as a matter of law** that the words "idiot", "snitch", "squealer", and "liar" were nonactionable opinions. *Id.* The Ninth Circuit has similarly stated that: "The law provides no redress for harsh name-calling." *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002)(finding that reference to the Plaintiff herself, or her story, as "trash", "crap", or "garbage" was non-actionable).

Applying the *Dunlap* three-factor test, this court holds as a matter of law, that the phrase "stupid bitch" is an offensive vulgarism, but which constitutes non-actionable opinion in a libel context. Applying the first factor, medium and context, there was an written offensive statement on the exterior of a mailing, sent in the context of a business inquiry and response. The statement was sent only to Plaintiff's mailbox and would have been read only by Plaintiff, those she chose to relay it to, and potentially mail handlers (as occurred in this case).

The second *Dunlap* factor, audience, as alluded to above, was fairly limited. The

ORDER - 5

intended audience was presumably only Plaintiff and perhaps members of her immediate family who may retrieve her mail.  Plaintiff describes the mailing as "glossy eye-catching" and sent by a nationally known company.  A postal employee, or other person inadvertently viewing Plaintiff's mail, would likely regard the vulgarism in the address as reflecting poorly on Echostar/DISH Network, or reflecting a lack of professional decorum, rather than reflecting poorly upon Plaintiff.  Neither of the two postal employees whose deposition testimony is of record stated that after reading the address label they thought Plaintiff is, in fact, "stupid", or that she is a "bitch".  Kirby Michael, the Postmaster, described his reaction as "incredulous" which connotes disbelief and skepticism, and he testified that the other postal employees had the same reaction.  Mr. Michael further stated: "I was shocked that anyone would send out something to somebody with the label the way it was, where it says stupid bitch." (Kirby Michael depo. p. 26).  Mr. Michael's testimony reflects that he was shocked at the behavior of the sender--Defendant, not that the label made him think negatively of Plaintiff.  In fact, Mr. Michael testified that he was not aware of any instance where anyone in the City of Omak thought any less of Plaintiff because of the mailing from Defendant. (Id. at 21).

As to the third and final *Dunlap* factor, whether the words implied undisclosed defamatory facts, there is no reason to believe that the audience of postal workers or immediate family members would believe that Defendant had special knowledge of Plaintiff's intelligence or her demeanor.

The phrase at issue is an offensive vulgarism, but legally a non-actionable opinion. The vulgarity lacks a precise core of meaning that could be proven legally false. Accordingly, Defendant's motion for summary judgment as to the libel claim is **GRANTED**.

**III. Intentional Infliction of Emotional Distress**

Arguably, given the grant of summary judgment against Plaintiff on her libel claim, her infliction of emotional distress claim must necessarily fail. See *Leidholdt v. LFP Inc.*, 860 F.2d 890, 893 n. 4 (9th Cir. 1988)("An emotional distress claim based on

ORDER - 6

the same facts as an unsuccessful libel claim cannot survive as an independent cause of action."); see also *Harris v. City of Seattle*, 315 F.Supp.2d 1105, 1111 (2004). However, the Washington Supreme Court in *Robel v. Roundup Corp.*, 148 Wash.2nd 35, 51 (2002), reinstated Plaintiff's claim for intentional infliction of emotional distress while affirming that her defamation claim was nonactionable.

Under Washington law, an intentional infliction of emotional distress claim has three elements: 1) extreme and outrageous conduct; 2) intentional or reckless infliction of emotional distress; and 3) severe emotional distress on the part of plaintiff. *Robel v. Roundup Corp.*, 148 Wash.2nd 35, 51 (2002). The first element requires that the conduct be **"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"**. (Emphasis supplied) *Id.* @ 51. See also *Dicomes v. State*, 113 Wash. 2d 612, 630 (1989). This first element goes to the jury only if the court determines that reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Id.* The tort of intentional infliction of emotional distress, or outrage[1] "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities". *Kloepfel v. Bokor*, 149 Wash.2d 192, 196 (2003). A plaintiff must be hardened to a certain degree of rough language, unkindness, and lack of consideration that comes from living in a society. *Id.* The words "stupid" and "bitch" are not uncommonly spoken and heard in today's society. Unfortunately, a person listening to certain radio, watching some television, or attending some movies would not, or should not, be surprised to hear such terms.

In determining whether the conduct was extreme and outrageous, as directed by the majority in *Robel*, this court looks to the conduct of the employee, Javier Villa. In *Robel*, the four dissenting justices would have looked to the conduct of the employer - - suggesting that the correct inquiry was into the employer's conduct in responding to the

---

[1] "Outrage" and "intentional infliction of emotional distress" are synonyms for the same tort. See *Kloepfel v. Bokor*, 149 Wash.2d 192, 193 n. 1 (2003).

ORDER - 7

employee's behavior and finding that the employer is only liable if it participates in outrageous conduct or takes no action in the face of such. *Robel*, 148 Wash.2d at 58-59 & 64-66 (2002)(dissent). The dissenting justices stated that if the employer does not participate or fail to take action in the face of repeated conduct, "the culprit must be the offending employee, 'deep pocket' considerations aside." *Id.* at 58-59. However, the majority of the justices took the approach that the employer is liable if the employee is acting in the scope of employment[2]. An employee's conduct is outside the scope of employment if it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Robel*, 148 Wash.2d at 53. This court finds Mr. Villa was acting within the scope of employment. He first interacted with Plaintiff when taking a call while at work, an integral part of his customer service job. He then asked and answered questions, as expected by his job. He then began to process a request to send additional literature on Defendant's products and services, and while doing so needed to enter Plaintiff's address into a database, and at that time added the offensive and inappropriate words "stupid bitch".

The conduct at issue is thus Mr. Villa's typing of the phrase into the database and the fact that the mailing was sent out three times. At argument, Plaintiff argued that Defendant's conduct was "extreme and outrageous" based on the number of mailings (3) and based on the unsupported allegation that Defendant knew there would be three mailings but did not attempt to stop the last two from being sent out or to notify Plaintiff. Plaintiff conceded that one mailing would not have constituted "extreme and outrageous" conduct, but argued that three mailings was sufficient to establish the first element of the outrage claim. The court agrees that the frequency, repetition, or volume of the conduct

---

[2] If this court were looking solely to Defendant Echostar's conduct, it certainly was not extreme and outrageous. Defendant investigated upon receiving notice of the mailing, found the individual responsible, and determined that his action required termination. Defendant's actions were prompt. Mr. Villa was terminated less than one month after Plaintiff's initial phone call to Defendant.

ORDER - 8

does bear some relevance, but in this case, three mailings over a roughly two week period is relatively insignificant. Compare with *Kloepfel v. Bokor*, 149 Wash.2d 193 (2003)(conduct included 740 phone calls over a three year period and resulted in three criminal convictions for harassment and felony stalking); *Brower v. Ackerley*, 88 Wash.App. 87 (1997)(conduct involved a "campaign of harassing phone calls" including threats of physical violence made over a 20-month period); *Robel v. Roundup*, 148 Wash.2nd 35 (2002)(conduct involved verbal mocking, insults, and harassment in the presence of the plaintiff, at her place of employment, that occurred on at least seven days over a six to eight week period).

Plaintiff's second argument, that Defendant's knowledge of the second and third mailings and failure to prevent them or to notify Plaintiff was extreme and outrageous, is also unconvincing and not factually supported. Plaintiff has submitted no admissible evidence of Defendant's knowledge and failure to act after the first mailing. Defendant denies such knowledge and the record shows Defendant acted promptly in terminating Javier Villa for generating the offensive mailings. Plaintiff relies on Attachment 14, an internal e-mail between two Echostar employees. This e-mail establishes only that Defendant knew of the three mailings as of the date of the e-mail, June 2003, some three months after the mailings were sent and three months after the termination of the employee.

The sending of the words "stupid bitch!!!" written on the outside of an envelope, even on three occasions over a two week period, while offensive, is simply not legally atrocious, extreme and outrageous conduct that "go[es] beyond all possible bounds of decency." Javier Villa's conduct was inappropriate, rude, and unprofessional, resulting in his termination. However, "rough language, unkindness, and lack of consideration" do not legally rise to the level of the tort of outrage in the state of Washington.

As to the second element, Javier Villa's conduct in entering the phrase "stupid bitch" into the database was presumably intentional as he was subsequently terminated for such.

ORDER - 9

As to the third element, a Plaintiff must suffer "severe emotional distress" although objective symptomatology is not required. *Kloepfel* at 198. To qualify as "severe" the distress must be "more than transient and trivial emotional distress" which is part of the price of living among people". *Id.* If the first two elements are established, the severity of the emotional distress should normally go to the jury unless the court determines that Plaintiff's alleged distress is mere annoyance, inconvenience, and normal embarrassment that is a part of life. *Brower v. Ackerley*, 88 Wash.App. 87, 101-102 (1997). The less outrageous the conduct, the more the court may scrutinize the severity element to insure that the claim is genuine, and vice versa - - the enormity of the outrage may carry conviction that the emotional distress is severe even in the absence of bodily harm. *Id.* at 100 (citing Restatement (second) or Torts § 46). As Plaintiff has not established the first element, that Defendant's conduct was legally "extreme and outrageous", this court need not determine the severity of Plaintiff's emotional suffering. See *Brower v. Ackerley*, 88 Wash.App. 87, 101(1997)("When the conduct offered to establish the tort's first element is not extreme, a court must withhold the case from a jury notwithstanding proof of intense emotional suffering.").

Defendant's motion for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress is accordingly **GRANTED**.

This court, offended by the conduct of the Defendant's employee, has reluctantly concluded that Plaintiff is not legally entitled to pursue an action for damages against the employer. Our justice system does not provide a civil cause of action for monetary damages for every vulgarity to which we are all subjected in today's imperfect world and society. The wrong by the employee resulted in his appropriate termination. It is likewise expected that the Defendant has been economically punished by the citizens in the Omak, Washington area and elsewhere who, the court assumes, would be reluctant to do business with a company whose employee was guilty of the misconduct referred to herein.

**IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment is **GRANTED** (Ct. Rec. 42).

2. Plaintiff's Second Amended Complaint (Ct. Rec. 30) and the claims therein shall be dismissed **with prejudice**.

3. The Clerk of the court is directed to enter Judgment dismissing the Second Amended Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and Judgment in favor of Defendant as provided herein, furnish copies to counsel, and close the file.

DATED this 11th day of May, 2005.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE